JUDGE SCHOFIELD

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————x

MARTIN WEINSTEIN,

                Plaintiff              DOCKET NO.

       -against-                       **COMPLAINT**
                                        *JURY TRIAL DEMANDED*

CITY OF NEW YORK; NEW YORK CITY
DEPARTMENT OF EDUCATION; DENNIS
WALCOTT, CHANCELLOR, ALL SUED IN
THEIR OFFICIAL AND INDIVIDUAL CAPACITY,

                Defendants

———————————————————————x

PLAINTIFF MARTIN WEINSTEIN, proceeding Pro Se, as and for his Summons and

Complaint filed to protect his Constitutional rights against the above-captioned

defendants, alleges upon knowledge as to his own facts and upon information and belief

as to all other matters:

<u>PRELIMINARY STATEMENT</u>

1. This is a civil action seeking injunctive relief, monetary relief, including past and on-

going economic loss, compensatory and punitive damages, costs and fees for violations

of Constitutionally protected rights brought pursuant to: the First, Fifth, Seventh, and

Fourteenth Amendments to the United States Constitution; 42 U.S.C §1983, § 1985(2),

(3); §1986; 28 U.S.C. § 1331, §1343, §1367, §1443; 18 U.S.C. §241, §242, §641; 18

U.S.C. §1341, §1343; 18 U.S.C. §1505, §1512, §1513, and §1515; 18 U.S.C.A.§1951,

§1952, and §1957; 18 U.S.C. §1961; Civil Rights Law §§70, 76-a, New York Civil

1

Service Law §75-b, and 79-h; Article I, § 8, §11 of the New York State Constitution; and other State law claims codified in the New York State Constitution as well as in the New York Civil Practice Law and Rules ("CPLR") as they relate to: prohibition of obstruction of justice, tampering with witnesses and contracts, conversion of property and fraud; support for freedom of speech and assembly; freedom from malice in law, from abuse of process and malicious prosecution, stigma plus character defamation; and from the intentional infliction of emotional harm.

2. Specifically, Plaintiff alleges that Defendants, with flagrant disregard for Plaintiff's Constitutionally protected rights, wantonly, recklessly, maliciously, knowingly and purposefully, acting *ultra vires* individually under a ministerial cloak and in conspiracy with each other under color of state law, have deprived Plaintiff of his protected rights of freedom of speech, assembly, and enjoyment of liberty and property in order to harass, intimidate, defame, and deprive him of his lawful rights.

3. None of Plaintiff's causes of action are frivolous, and all are brought to this for the violation of numerous Constitutional rights by Defendants, many of whom are under oath to the State of New York to be impartial and honor the rules, and Statutes of the State of New York, yet deliberately chose not to.

4.. Plaintiff's invocation of the equitable powers of this Court is just and proper based upon a pattern, practice, custom and policy of bad faith, harassment, defamation and intentional infliction of emotion distress to further a corrupt scheme against Plaintiff's person and property by defaming his good name in such a manner as to cause him harm for no valid reason other than retaliation, and bad faith. Plaintiff seeks economic and

compensatory damages and punitive damages to the extent allowable by law, and other

appropriate legal and equitable relief pursuant to federal, state and city law.

JURISDICTION AND VENUE

5. Jurisdiction of this Court is invoked under:  the First, Fifth, Seventh, and Fourteenth

Amendment to the United States Constitution; 42 U.S.C §1983, § 1985(2), (3); 18

U.S.C. §1505, §1512,  §1513, and §1515; 18 U.S.C.A.§1952 and §1957, §1962, §1963,

§1964, and 18 U.S. C. §1964(c);

6. Formerly known as ancillary and pendant jurisdiction, supplemental jurisdiction under

28 U.S.C. §1367 permits both pendent claim and pendent party jurisdiction. 28 U.S.C.

§1367 changed "the pre-existing law in that it makes supplemental jurisdiction

mandatory, not discretionary". This court has the power to issue declaratory relief

pursuant to 28 USC §§2201 and 2202; this Court has supplemental jurisdiction over

Plaintiff's state and city law claims under 28 USC §1367(a).

7. 28 U.S.C. 1343(3) provides for original jurisdiction of the district court:

To redress the deprivation, under color of any State law, statute, ordinance, regulation,
custom or usage, of any right, privilege or immunity secured by the Constitution of the
United States or by any Act of Congress providing for equal rights of citizens or of all
persons within the jurisdiction of the United States.

8. 28 U.S.C. 1331(a) provides:

The district courts shall have original jurisdiction of all civil actions wherein the matter in
controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and
arises under the Constitution, laws, or treaties of the United States.

9. 42 U.S.C. 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of
any State or Territory, subjects, or causes to be subjected, any citizen of the United States
or other person within the jurisdiction thereof to the deprivation of any rights, privileges,
or immunities secured by the Constitution and laws, shall be liable to the party injured in
an action at law, suit in equity, or other proper proceeding for redress.

10. Plaintiff alleges that he has a prima facie case under 42 U.S.C. §1983 as the actions cited herein [a] occurred "under color of law" and [b] are derivations of Constitutional rights as well as federal and state statutory rights. Defendants deliberately, maliciously, and in bad faith denied him access to relevant and material emails until March 2013, and these would have led to his re-instatement as Superintendent of District 19 and allowed him to clear his name.

11. Instead, Plaintiff was harassed into resigning his position leaving him permanently scarred and his name defamed. Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to influence, delay, or prevent the testimony of any person in an official proceeding, or cause or induce any person to withhold testimony, or withhold a record, document, or other object, from an official proceeding, as Defendants have attempted to do by threatening is acting unlawfully and is tampering with an informant. This Court has jurisdiction over 18 U.S.C. §1512.

12. Venue herein is proper under 28 U.S.C. §1391(b) because the causes of action arose in the Southern District of New York, and the events or omissions giving rise to Plaintiff's claims occurred in this District.

13. Defendants have waived any protection or immunity they may have enjoyed under the Eleventh Amendment to the Constitution of the United States of America because they knowingly, maliciously and intentionally inflicted the most emotional, physical, and financial harm possible on Plaintiff without any right to do so. Defendants also do not

have protected status giving them absolute or quasi-judicial immunity as a result of their deliberate actions.

14. The presence of malice and the intention to deprive a person of his/her civil rights is wholly incompatible with the Defendants' policy, use and premise of public service.

15. When the municipal department and/or State is one of the perpetrators and violators as in the instant case, there can be no expectation of just, if any, relief from it. Neither can cause a federal violation, and then try to prohibit litigants from seeking redress in the federal courts for those same violations.

16. There is no court other than this one that can hear the claims asserted by Plaintiff in the instant complaint.

17. The headquarters of the New York City Department of Education is located at 52 Chambers Street, New York City, and they all routinely conduct business within the Southern District of New York.

THE PARTIES

18. A product of the N.Y.C. School system, Plaintiff began his career in education as a teacher of Language Arts and Legal Studies at Shell Bank Intermediate School. An actor for the Broadhollow Players of Long Island, Plaintiff brought his love of the theatre to the students of Shell Bank, by directing several successful student productions. His directorial skills were also evident at Baldwin Senior High School where he served as the school's drama coach. As Assistant Principal of P.S. 140 (District 28) Plaintiff was an instrumental member of the team that removed the school from "Corrective Action".

19. Summer months were an opportunity for Weinstein to work with students in a recreational environment. As the director of summer camps for underprivileged students, (a program created by the late Chancellor Green) Plaintiff honed his leadership skills. The summer of 2003 brought him to I.S. 302 (Region 5, District 19) as its' Principal. I.S. 302 was a SURR school in jeopardy of closure. Working collaboratively with Dr. Kathleen Cashin and the Region 5 team, many successful strategies, activities and programs were implemented. As a result, student achievement scores improved dramatically and I.S. 302 was removed from the SURR list. Plaintiff shared this success with the staff of I.S. 302 and stated in a memo that this success "is a testament to your dedication and commitment to our students."

Indeed, Brooklyn Borough President Marty Markowitz honored Principal Weinstein's dedication by a proclamation making January 23, 2006 "Martin Weinstein Day in Brooklyn, USA". On March 11, 2007, he was named Intermediate School Principal of the Year by The Association of Orthodox Jewish Teachers (AOJT). Realizing that physical activity can be linked to learning, Plaintiff, an accomplished marathon runner, introduced his running passion to I.S. 302. The I.S. 302 Striders is a students' running club that has received media attention. Students and staff coaches such as Plaintiff have committed themselves to a regimen of early morning and afternoon workouts as well as weekend races. Once again, another method to mold and motivate youngsters to always do their best.

20. Passing along to the next generation of teachers and administrators his strategies and ideas, Plaintiff is an adjunct professor at both Brooklyn and Touro College Graduate Schools of Education, Special Education and Psychology. He attributes his success as a

public school principal to his roots as a classroom teacher. "By being sensitive and empathetic to the individual and unique needs of the students in my classes, I was able to gain a better sense of how to provide them with their requisite skills for success. With this said, I believe that my strongest attribute as a principal is to empower those around me to fulfill their potential."

From August 2007 to June 30, 2010 Martin Weinstein was a well-respected Superintendent of District 19 in King's County, N.Y.  In a fact, he was one of the highest rated Senior Achievement Facilitators in the city during the years Superintendents performed this function. He then was appointed Principal of the UFT Charter School.

21. At all times relevant in this Complaint, Defendant New York City Department of Education, is a "public employer" within the meaning of New York State Civil Service Law §75-b(i)(a) and therefore empowered to be the governing body of the District and existing under the laws of the State of New York, and is subject to the provisions of New York State Law, the New York State Constitution and the United States Constitution. At all times relevant to this action, Defendant has been the employer within the meaning of employment and contract law.

22. At all times relevant to this Complaint, Defendant Dennis Walcott is the person appointed as "Chancellor" of the New York City Department of Education. He was and is a co-worker of the individuals named in the matter cited herein and as such assisted in the misconduct and false claims made against Plaintiff. Walcott is responsible for creating and implementing policies carried out in accordance with the U.S. Constitution and all federal, state,  and city laws, statutes, ordinances, regulations, policies, customs and usages of the State of New York

## FACTUAL BACKGROUND

23. Plaintiff alleges that the Defendants intentionally made misrepresentations that led Plaintiff to believe that the Defendants would not impede him from future job opportunities, which induced him to sign a resignation letter, when in fact they did impede him from employment and in so doing, harmed him pecuniarily.

24. From  August 2007 to June 30, 2010 Plaintiff worked as the Superintendent for District 19 of the NYC Department of Education (DOE) in Kings County New York. In late October of 2009, Plaintiff was summoned to the Office of the Chancellor at 52 Chambers Street, New York, N.Y., by Dr. Dorita Gibson, Supervising Senior Superintendent.  Plaintiff had exchanged emails with the former Chancellor [Joel Klein], about the Yankees. While the Chancellor had participated in this exchange and even encouraged it, supervisors within DOE frowned on this activity. Plaintiff was coerced into signing a letter of resignation (non irrevocable) and he was told and even encouraged to pursue another similarly paid position within DOE.  In short, this was an action which was not going to harm Plaintiff financially nor his professional standing . Defendants knew at that time that they were deliberately, maliciously, and in bad faith lying to Plaintiff in order to get his resignation after false claims were made against his good character.

25. During the second week in January, 2010, Plaintiff applied for a Network Leader's position at the same salary he had been receiving as a Superintendent. Plaintiff immediately received word from Executive Director Anthony Canelli that his phones were "ringing off the hook" from principals excited about the prospect that he would be working with them. At the same time Plaintiff reported the illegal activity of one of the

District's CEC members, formerly known as School Board Members, to the Special

Commissioner of Investigation. In essence, one of the members was pressuring district

employees, as well as Department of Education employees in other districts, to purchase

a book she had recently published.

26. During the course of the investigation, Plaintiff received a death threat on January 8,

2010, which he reported to the Special Commissioner as well as to the 81st Precinct in

Brooklyn.

Prior to this investigation, Plaintiff had asked his office staff if anyone had any

knowledge that the offender had emailed principals in Plaintiff district regarding the sale

of her book. One employee stated she did have such an email. Plaintiff asked her to

forward it to him and she replied for him to leave the offender alone and to let sleeping

dogs lie.

27. In late January, Plaintiff learned that the offender confessed to making the

threatening call to him and had she also resigned her position as CEC member. In

addition-, Plaintiff was informed the offender would probably have to pay a "heavy fine"

to the Conflicts of Interest Bureau. After that, the retaliation against Plaintiff

commenced.

28. In late January of 2010, Plaintiff received a call from Anthony Canelli requesting

that Plaintiff "pull his application" as Network Leader. Canelli informed Plaintiff that

due to the negative feedback he received from Chancellor Klein and Eric Nadelstern that

there was a problem with the Plaintiff, and Plaintiff should not be working in a

management capacity.  Plaintiff emailed Nadelstern and stated that his reputation as a

superintendent was exemplary and in addition, principals are coming out in droves to

support his new role as Network Leader. His email response was that Plaintiff still had tenure as a principal, should he elect to remain with the New York City DOE. Gibson informed the Plaintiff that he should comply with the request and pull his application accordingly and the overt insinuation was that if he did not do so, he would infuriate senior leadership and preclude himself from getting either a job with the DOE or even outside the DOE in his field.

29. In the weeks which followed, Plaintiff's office staff began behaving in an uncivil and discourteous manner towards him, as well as towards, David Best, District 19 CEC Member who had acted as a witness against the offender.  Additionally, the attendance of one of Plaintiff's employees, the offender's close friend, became problematic. She was absent, late or left work early at least once week and in several instances, she failed to call or email regarding said absences.  Although, Plaintiff did not discipline her in writing, he sent her emails where he discussed her failure to report her absences which constituted the abandonment of her position . During this time, Plaintiff applied for several management-level positions within the department.

30. Plaintiff's applications were invariably received with great interest by department heads. In virtually every instance he was informed that due to feedback from "above", or words to that effect, they would not allow him to advance in the process.

31. In late April of 2010, Plaintiff received an email from Ms. Gina N. Martinez, Equal Opportunity Compliance Officer for the DOE's Office of Equal Opportunity who indicated that one of his employees has made an allegation that he had engaged in sexual harassment and Plaintiff agreed to meet with her on May 11, 2010 in her office.

32. Martinez stated that the offender's friend had accused him of suggesting that she participate in a Menage a Trois with three parents; this allegation was completely false. The offender's friend had herself engaged in a course of conduct in which she always made incredibly inappropriate lewd comments with sexual connotations.

33. Upon information and belief she either was, or is now, being investigated by OEO for lewd and inappropriate comments.

34. At the appearance before Martinez, Plaintiff was asked if he had engaged in any non-consensual physical contact with any employees in his office who were all female.

35. Plaintiff responded he had not and this fact was uncontested. Plaintiff had a witness sitting in the meeting with him who had exonerating evidence and who was a principal in Plaintiff's district and for some inexplicable reason she was not allowed to present her evidence.

36. Plaintiff informed Martinez that the offender's friend's complaint was an act of retaliation for his inquiries relating to her attendance as well as in retribution for the SCI investigation Plaintiff caused to be initiated against her friend. Martinez stated that she would email Plaintiff her decision in a timely manner.

37. In early June, several discussions occurred between Dr. Gibson, Dr. Feijoo and Plaintiff regarding his transition to principal although Plaintiff still expressed interest in a management position. However, Gibson and Feijoo, stated that a management position would be out of the question and they expressly told him to drop it and to just leave it alone. Nevertheless, Plaintiff was assured he would receive a principalship commencing July 1, 2010.

38. On June 16, 2010, Plaintiff received an email from Martinez, that her office had substantiated the allegation made against him, and informing him that Gibson was asked to determine appropriate disciplinary action. The charge which was substantiated against Plaintiff was that he had made the comment to the offender's friend that she should have a menage a trois with three parents. This charge was substantiated despite the only information allegedly supporting the allegations being uncorroborated, and was supplied by a person who has subsequently been discredited and who had a reason to seek retribution against Plaintiff for what he caused to happen to her friend. Additionally, the false charge was reported a day after Plaintiff had emailed his accuser regarding her failure to report an absence, something for which she could have been terminated. During the week of June 21, 2010, Plaintiff was notified by Feijoo that a principalship in District 18 was being held for him and that he should make arrangements to visit the school prior to July 1, 2010.

39. On June 25, 2010, Plaintiff was summoned by Gibson to the Chancellor's Office. During the course of the meeting, Plaintiff was told that the Chancellor reviewed OEO's report. He was told that it was the decision of that office to have him terminated, or in the alternative, he could sign an irrevocable letter of resignation, effective June 30, 2010. This letter was distinguishable from the prior resignation letter because it precluded Plaintiff from taking any position within DOE. Plaintiff signed the letter despite having committed no wrongful act as he was pressured during the meeting, and he was not given the opportunity to consult with an attorney or given time to reflect before he signed and without being given the opportunity to read and review the EOE report. Plaintiff was made to understand that if he had not signed the letter, as he was being pressured to do,

he would have been terminated and he may never have had a chance to work in another school system.

40. In late August, 2010, Plaintiff received word that Mr. David Best, District 19 CEC Member had stepped forth to corroborate his claims that the allegation made against him was an act of retribution. Despite the fact that the finding against the Plaintiff was based solely on false information provided by a badly impeached witness, defendants have been disseminating the defamatory finding within Plaintiff's chosen field.

41. Plaintiff attended a job interview in September of 2010 at which time, he was told by the interviewer, Harvey Newman, that being promulgated by the DOE was that Plaintiff was terminated for sexual harassment.  To date, Plaintiff has not been made whole, and has lost, *inter alia*, personal property and possessions and promotional advancement opportunities, due to this judgment against him which Defendants knew was false and yet have pursued ever since.

42. In March 2013 the Department allowed Plaintiff to access his emails where he saw, read, and downloaded the evidence that his alleged "sexual misconduct" had been made up by Defendants.


ARGUMENT

43. Defendants' purpose was to crush Plaintiff, defame him, and deny Plaintiff his lawful and protected rights to freedom of speech, and other civil rights and protections pursuant to both State and Federal statutes. Defendants have shown frivolous conduct and flagrant disregard,  actionable negligence, fraud and bad faith in public policy. It is true that the state courts are wholly without power in any way to control the operations of the federal

courts, but the reverse is not true. Furthermore the federal courts possess the right to protect their own jurisdictional rights or the rights of parties to suits before them by restraining orders forbidding proceedings in the state courts.

44. Plaintiff Pro Se requests this Court's notice of the following: that Plaintiff has tried his best to file a pleading that is in accordance with Rule 8(a)(2), and asks that this court review the complaint in light of this as a best effort made in good faith; and that any consideration of a Rule 12(b)(6) dismissal for failure to state a claim upon which relief can be granted requires that a Court accept as true all well-pled factual allegations within and outside the pleadings, since a motion to dismiss for failure to state a claim tests only the legal sufficiency of a complaint, and a plaintiff is thus required to allege only enough facts to state a claim to relief that is plausible on its face. Plaintiff has, he alleges, met this standard to the best of his ability and the instant complaint is not frivolous and states a cause of action that is valid under the laws of this Court to pursue.

45. Defendants have shown a conscious disregard for the rights and reputation of Plaintiff and acted  so recklessly as to amount to such disregard. New York State public policy prohibits insurance indemnification for punitive damage awards and prohibits insurance coverage for punitive damages assessed against New York insureds. As a result of Plaintiff's reporting on fraudulent conduct of Defendants Plaintiff was and continues to be subjected to the intentional infliction of emotional harm, verbal assault, ethical misconduct, denial of his rights to free speech and assembly, retaliatory harassment and constitutional torts involving rights to liberty, property and freedom of the press from prior restraint.

46. Plaintiff has pleaded a cause of action for fraudulent inducement in sufficient detail to clearly inform Defendants that they knowingly made a misrepresentation to the Plaintiff in informing him they would not impede him from looking for future employment when they coerced him into resigning. A claim for a prima facie tort requires: "1) the intentional infliction of harm, 2) which results in special damages, 3) without any excuse or justification, 4) by an act or series of acts which would otherwise be lawful." Freihofer v Hearst Corp., 65 N.Y.2d 135, 142-3 (1985). Fraudulent inducement requires a plaintiff to "assert the misrepresentation of a material fact, which was known by the defendant to be false and intended to be relied on when made, and that there was justifiable reliance and resulting injury." Braddock v Braddock, 60 A.D.3d 84, 86 (1st Dep't 2009). In the case at bar the alleged misconduct was based upon hearsay and an unfair investigation into the charges. Plaintiff was not given any consideration of his innocence.

Courts have accepted a number of motives as objectively sensible reasons for discharge of an at-will employee. The most prominent of these reasons is a reduction in force. Adverse economic conditions, even if the employee is not at fault for these conditions, constitute just cause for discharge of that employee. These adverse conditions include the discontinuance of a new product line, business cutbacks, business closing, elimination of a position, and a reduction in force. In addition, employers have satisfied the just cause requirement when the employee fails to meet performance standards, or engages in conduct that injures the employer's reputation or interests. This may include public advocacy of illegal behavior. Other just cause reasons for terminating an employee include intoxication, severe personality conflicts, criminal acts against the employer,

15

lateness and absences, and insubordination. Although many just cause reasons exist, the question of the role of the judicial factfinder in a just cause dispute remains unresolved. In other words, to whom should the proffered reasons for discharge be considered objectively reasonable? On the one hand, the employer is the sole judge of its own reasonableness. In Simpson v. Western Graphics Corp., Western Graphics discharged Simpson for violently threatening another employee. Simpson, whose employment was covered by a just cause provision in an employee handbook, denied making the threats. Simpson argued that a court should determine whether he did in fact threaten the other employee. The court reasoned that the handbook was a unilateral self-imposed restriction by the employer and no statement was ever made relinquishing its power to determine whether facts constituting cause for termination existed.

The court stated that the employer agreed to govern itself by the just cause standard, but "did not agree to a secondary level of fact-finding authority." The court concluded that it did not have to determine whether just cause actually existed because that discretion rested with the employer alone. As a result, the court refused to question the employer's decision.

 The subjective test of the Simpson decision allows employers to retain broad managerial discretion when choosing whether to terminate their employees. The Simpson decision, however, creates troubling implications for employees challenging their employers' good cause decisions. Employers only need to articulate a good faith belief that a just cause to terminate exists. The employer has no responsibility to conduct a meaningful investigation or document relevant behavior that would justify its decision. An employer may be tempted to cloud an illicit motive by stating a false reason that complies with just

cause requirements. The difficulty of establishing proof of an employer's disingenuous intent makes the incentive to lie all the more powerful. As a result, employers under Simpson benefit from increased employee loyalty obtained by a just cause regime without the accompanying burdens. Just cause becomes an illusory subjective standard. A contrary understanding of just cause proposes submitting the employer's decision to de novo review by a factfinder. A judge or jury would reach an objective independent determination of whether the employer's proffered reason really occurred. The most prominent case advocating this standard is Toussaint v. Blue Cross & Blue Shield of Michigan. Toussaint was a middle level manager who was assured  before commencing employment that as long as he performed his job he would not be terminated. Toussaint was terminated because of alleged personality conflicts with other employees and insubordination in a meeting with executives. The court concluded that, at least for discharges based upon misconduct, the jury must determine whether the employee actually committed the infraction alleged by the employer.

An independent factual review of just cause determinations significantly benefits employees. Just cause employees have protections similar to their civil service and unionized counterparts-independent review of an employer's decision by a neutral third party or a group of peers. Such a secondary level of factfinding, however, significantly infringes upon employers' prerogative to shape and design their workforce. De novo review of just cause allows the jury to override the conclusions of the employer. The factfinder becomes the equivalent of a supervising employment panel that could comment upon virtually any just cause decision. Juries, the predominant factfinders in these employment cases, have no specialized knowledge of the employer's goals,

interests, or business needs, and they bring to bear their own personal prejudices. Far removed from the rapid- fire decision-making often required in a modern workplace, juries may be tempted to over-analyze the employer's rationale. Large money judgments and jury overreaching would remain a real risk. Employers aware of these biases may be fearful of discharging employees even when the legal right to do so exists. This could create a chilling effect on an employer's managerial discretion.

In Baldwin v. Sisters of Providence in Washington, Inc., the plaintiff worked as a respiratory therapist for the defendant hospital, where he was subject to an employee handbook that limited terminations to instances of "gross violation of conduct." The plaintiff was accused of molesting a patient. After an investigation,  the plaintiff was discharged. The trial court entered judgment in favor of the plaintiff. On appeal, the defendant argued that the trial court's jury instruction on just cause was improper because it only incorporated an objective standard, making the jury the sole determiner of whether just cause existed. The Washington Supreme Court agreed with the defendants and adopted a mixed test that limited the discretion of the employer with the evaluation of the factfinder.

 The court concluded:

We hold "just cause" is a fair and honest cause or reason, regulated by good faith on the part of the party exercising the power. Furthermore, a discharge for "just cause" is one which is not for any arbitrary, capricious, or illegal reason and which is one based on facts (1) supported by substantial evidence and (2) reasonably believed by the employer to be true.

In the matter cited herein the facts were omitted and ignored. Plaintiff was a long-term

public employee acting as a concerned citizen when he reported wrong-doing, and he was

forced to resign for doing his civic duty, then his character was defamed.

47.  To state a claim for defamation in New York a pleading must allege "a false

statement, published without privilege or authorization to a third party, constituting fault

as judged by, at a minimum, a negligence standard, and it must either cause special harm

or constitute defamation per se." Dillon v City of New York, 261 A.D.2d 34, 38 [1st Dept

1999].  Plaintiff alleges the Defendants took action to prevent Plaintiff from obtaining

new employment after they terminated him.  He attended a job interview in September of

2010 at which time, he was told by the interviewer, Harvey Newman, being promulgated

by the DOE, that Plaintiff "was terminated for sexual harassment." Defendants in so

doing intentionally inflicted harm on the plaintiff, including but not limited to the loss of

his position with DOE. Dillon v City of New York, 261 A.D.2d 34, 38 [1st Dept 1999];

accord Saluatore v Kumar, 45 AD3d 560, 563 [2d Dept 2007], lv denied 10 NY3d 703

[2008]). Defendants spreading the fiction that Plaintiff had committed an act of sexual

harassment and making that fiction known to Harvey Newman, a job interviewer, sounds

in defamation. Thus Plaintiff has a cause of action sounding in prima facie tort for strictly

wrongful discharge, in addition to his being hampered in finding any future employment

as a result of deliberate and false claims made against him..

48. The First Department in Braddock, found that to state a claim for fraudulent

inducement "a plaintiff must assert the misrepresentation of a material fact, which was

known by the defendant to be false and intended to be relied on when made, and that

there was justifiable reliance and resulting injury."  Braddock v Braddock, 60 A.D.3d 84,

86 (1st Dep't 2009). Here, Plaintiff successfully has met all the elements for fraudulent

inducement needed in a pleading.  CPLR 3016 (b) requires that fraud claims be "stated in detail," but only requires that there be "sufficient detail to clearly inform a defendant with respect to the incidents complained of and is not to be interpreted so strictly as so prevent an otherwise valid cause of action in situations where it may be impossible to state in detail the circumstances constituting the fraud." Pike v NY Life Ins.,72 A.D.2d 1043, 1050 (2d Dept. 2010).  In Pike, the court held that the plaintiff's complaint was pleaded with adequate specificity when the plaintiff, in his complaint and in supplemental affidavits, described the misrepresentations in sufficient detail to conform to a "clearly inform" standard.

49. Defendants made knowing misrepresentations of present material fact to Plaintiff intended to deceive him and which induced him to act upon the misrepresentations with resultant damages.

50. Defendants have published the false findings that Plaintiff sexually harassed an employee within Plaintiff's industry, greatly impairing Plaintiff's ability to obtain a new position. Defendants knew that the statement was false when made.

51. Clearly, giving these facts "every favorable inference to determine whether any cognizable legal theory can be discerned" Plaintiff  has stated a cause of action for fraudulent inducement.

## FIRST CAUSE OF ACTION
Violation/Interference with Constitutionally Protected Rights – 1st, 5th, 7th & 14th Amendments; 42 U.S.C §1983 et seq.; Freedom of Speech and Association; Due Process and Equal Protection Rights;

52.. Plaintiff repeats an re-alleges each and every allegation contained in paragraphs 1 through 51 as though fully set forth herein.

53. The conduct and actions of Defendants in retaliating against Plaintiff and subjecting him to assault, ethical misconduct, violations of due process, and equal rights under the U.S. Constitution and the laws of the State and City of New York, were and continue to be unlawful, oppressive and a malicious attempt to retaliate against him in violation of 42 U.S.C §1983, TITLE 42 CHAPTER 21 SUBCHAPTER I § 1985(2), (3), the First, Fifth, Seventh and Fourteenth Amendments to the Constitution, Civil Rights Law §79-h, Article I, § 8 of the New York State Constitution, Title 28: part iv; chapter 85; § 1343, and 28 U.S.C. §1331,28 U.S.C §1367, Judiciary Codes of Conduct, Judiciary Law §487, Title VII and other State law claims..

54. Defendants' infringement upon and violation of Plaintiff's rights protected under the statutes listed above was and is intended to harm Plaintiff.

55. Defendants' conduct and actions are intentional, malicious, taken with deliberate indifference and or reckless disregard for the natural and probable consequences., without lawful justification or reason.

56. As a direct result of Defendants actions described herein, Plaintiff has suffered and continues to suffer fear, trauma, emotional distress, mental anguish, loss of income, and loss of health.

57. As a result of the Defendants' crusade to maliciously harm Plaintiff, Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages, as well as damages for mental anguish and is entitled to damages sustained to date and continuing in excess of $2 million dollars as well as punitive damages and costs.

## SECOND CAUSE OF ACTION
### Intentional and Negligent Infliction of Emotional Distress , Verbal Harassment, With Unjustified Threats of Future Harm

58. Plaintiff repeats and re-alleges each of the allegations as set forth above in paragraphs 1 through 57 inclusive, of this Complaint, with the same force and effect as though herein fully set forth.

59. Plaintiff was subjected emotional and psychological dangers and intimidation. Plaintiff has been subjected to extreme and outrageous conduct by Defendants, whose intent is to cause – or recklessly disregard the substantial probability of causing – severe emotional distress; severe emotional distress to the plaintiff is shown to be proximately caused by the Defendants' conduct; Damages have been severe. These acts created an unreasonable risk of causing the Plaintiff emotional and physical distress; the Plaintiff's distress was foreseeable; the defendants' conduct was the cause of the Plaintiff's distress; and facts show there is a breach of direct duty of care to the Plaintiff.

60.  As a result of this retaliation, intimidation, and abuse, Plaintiff has been irrevocably harmed both emotionally and physically, and demands judgment against Defendants an amount more than $2 million, or to be determined by a jury of his peers.

THIRD CAUSE OF ACTION
WHISTLEBLOWER RETALIATION
18 U.S.C. §1986 Action For Neglect To Prevent; Defamation

61. Plaintiff repeats and re-alleges each of the allegations as set forth above in paragraphs 1 through 60 inclusive, of this Complaint, with the same force and effect as though herein fully set forth.

62. Plaintiff was retaliated against after reporting as a citizen on a matter of public concern employees working for Defendants who were not acting lawfully in their positions.

63. Plaintiff reported the misconduct he saw, as a concerned citizen.

64. Plaintiff has been irrevocably harmed both emotionally and physically, and demands judgment against Defendants an amount not less than $2 million, or to be determined by a jury of his peers.

## FOURTH CAUSE OF ACTION
### 42 U.S.C. §1983 – STATE AND MUNICIPAL VIOLATIONS; Deprivation of Rights Under Color of Law; Misrepresentation New York State Civil Rights Law §§70, 75-b, 79-h

65. Plaintiff repeats and re-alleges the allegations et forth in paragraphs 1 through 64 inclusive, of this Complaint, with the same force and effect as though herein fully set forth.

66. Defendants, acting under color of law, have engaged in a course of action and behavior rising to the level of a policy and condoned practice, and this has deprived Plaintiff of his rights secured by the Constitution and laws in violation of 42 U.S.C. §1983.

67. It can be said that to condone lies, false documentation, retaliation and other such acts is contrary to Municipal Law and Public Officers Law.

68. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages, as well as damages for mental anguish and is entitled to damages sustained to date and continuing in excess of $2 million dollars as well as punitive damages and costs.

## FIFTH CAUSE OF ACTION
### Abuse of Process

69. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 68 inclusive, of this Complaint, with the same force and effect as though herein fully set forth.

23

70.  Defendants, and each of them conspired to deprive Plaintiff of his First, Fifth, Seventh and Fourteenth Amendment rights, and jointly caused such deprivation of rights by acting in concert to unlawfully bring harm, distress, and economic ruin to Plaintiff as described above.

71. Such actions by Defendants denied Plaintiff equal protection under the law, and his rights are guaranteed under U.S.C. §§ 1983, 1985, and the Fourteenth Amendment of the US Constitution.

64. As a result of the Defendants' crusade to maliciously harm Plaintiff, Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages, as well as damages for mental anguish  and is entitled to damages sustained to date and continuing in excess of $5 million dollars as well as punitive damages and costs.


## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that the Court enter judgment and an Order:

[A] First Cause of Action: in excess of $2 million dollars as well as punitive damages, and costs.

B] Second Cause of Action: in excess of $2 million dollars as well as punitive damages, and costs.

C] Third Cause of Action: in excess of $2 million dollars as well as punitive damages, and costs.

D] Fourth Cause of Action: in excess of $2 million dollars as well as punitive damages, and costs.

E] A declaratory judgment stating that Defendants willfully violated Plaintiff's rights secured by federal and state laws as alleged herein.

F] Injunctive relief: an injunction requiring Defendants to correct, and cease all present and past violations of federal and state law as alleged herein; to enjoin Defendants from continuing to act in violation of federal and state law as stated herein; and to order such other injunctive relief as may be appropriate to prevent any future violations of said federal and state laws;

G] Awarding Plaintiff punitive  damages against all individual defendants.

H] An Order granting such other legal and equitable relief as the court deems just and proper.

JURY TRIAL IS DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: New York, New York
        August   2013

Respectfully Submitted,

Martin Weinstein

PO Box 952
Commack, NY 11725