DEC 3 0 2013

PRO SE OFFICE

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MARTIN WEINSTEIN
_____

_____

*(In the space above enter the full name(s) of the plaintiff(s)/petitioner(s).)*

\- against -

CITY OF NEW YORK; NEW YORK CITY DEPARTMENT OF EDUCATION;

DENNIS WALCOTT, CHANCELLOR, ALL SUED IN THEIR OFFICIAL AND

INDIVIDUAL CAPACITY

*(In the space above enter the full name(s) of the defendant(s)/respondent(s).)*

13 ___ Civ. 6301 ___ (LGS) ( )

**AFFIRMATION IN OPPOSITION**
**TO MOTION**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/30/2013

I, MARTIN WEINSTEIN _____, **affirm under penalty of perjury that:**
                    *(name)*

1.    I, MARTIN WEINSTEIN _____, am the plaintiff/defendant in the above entitled action, and
                    *(name)*                                        *(circle one)*

respectfully submit this affirmation in opposition to the motion dated November  15  , 20 13 ,
                                                                        *(date of motion)*

made by Corporation Counsel of the City of New York ____ asking that the court order the following relief:
        *(name of moving party)*

Motion to dismiss the complaint.
_____
                    *(state what the moving party wants the Judge to order)*
_____.

2.    I have personal knowledge of facts which bear on this motion because _____

I am the plaintiff in the matter and I am the subject of the complaint.
_____
                    *(state the basis on which you learned of the relevant facts)*

3.    The motion should be denied because *(state your reasons using additional paragraphs and sheets of paper as necessary)*

Please see attached.
_____
_____.

4.    In view of the foregoing, it is respectfully submitted that the motion should be denied.

**I declare under penalty of perjury that the foregoing is true and correct.**

Dated:  Commack ____ , N.Y. ___
        *(city)*        *(state)*
        December   27  , 20 13
        *(month)*  *(day)*  *(year)*

Signature _____
Address PO Box 992 _____
Commack, N.Y. 11725
Telephone Number (917) 675-1577 or email:
Fax Number *(if you have one)* mweinstein3@schools.nyc.gov

*Rev. 05/2007*

DOCKET NO. 13 Civ. 6301 (LGS)

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

MARTIN WEINSTEIN,
Plaintiff

-against-

CITY OF NEW YORK;
NYC DEPARTMENT OF EDUCATION;
DENNIS WALCOTT, CHANCELLOR, all sued
both individually and in their official positions,
Defendants

# PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

MARTIN WEINSTEIN
Plaintiff Pro Se
P.O. BOX 952
Commack, N.Y. 11725
mweinstein3@schools.nyc.gov
or, martin.weinstein@touro.edu
917-675-1577

1

## TABLE OF CONTENTS

PRELIMINARY STATEMENT...................................................................................2.

POINT I: RELEVANT BACKGROUND FACTS..........................................10

POINT II: THE CAUSES OF ACTION BROUGHT IN THE AMENDED COMPLAINT CANNOT BE DISMISSED WITHOUT VIOLATING PLAINTIFF'S RIGHTS TO THE RELIEF HE REQUESTS..............................................................................................17

POINT III: PLAINTIFF HAS MET HIS BURDEN TO PROVE VIOLATIONS OF LAW PURSUANT TO §1983 BY CITING FACTS IN A TIMELY FASHION......23

POINT IV: DEFENDANTS HAVE CREATED PROCEDURAL ERRORS THAT ARE FATAL TO A FAIR HEARING FOR PLAINTIFF AND FURTHER THE DENIAL OF DUE PROCESS CITED IN HIS COMPLAINT........................24

POINT V: LEAVE TO REPLEAD SHOULD BE FREELY GIVEN.................. ... 27

CONCLUSION ..............................................................................................................30

## PRELIMINARY STATEMENT

PLAINTIFF MARTIN WEINSTEIN, proceeding Pro Se, as and for his Opposition to Defendants' Motion To Dismiss alleges upon knowledge as to his own facts and upon information and belief as to all other matters:

Plaintiff, in his opposition to the Defendants' Motion To Dismiss, argues that he has made a good faith effort to present to this Court evidence - and not merely conclusions - of actions taken by Defendants which have harmed him and for which he requests remedies which would make him whole. He is seeking injunctive relief, monetary relief, including past and on-going economic loss, compensatory and punitive damages, costs and fees for violations of Constitutionally protected rights brought pursuant to:

the First, Fifth, Seventh, and Fourteenth Amendments to the United States Constitution; 42

U.S.C §1983, § 1985(2), (3);  §1986; 28 U.S.C. § 1331, §1343, §1367, §1443; 18 U.S.C. §241,

§242, §641;  18 U.S.C. §1341, §1343; 18 U.S.C. §1505, §1512,  §1513, and §1515; 18

U.S.C.A.§1951, §1952, and §1957; 18 U.S.C. §1961;  Civil Rights Law §§70, 76-a, New York

Civil Service Law §75-b, and 79-h; Article I, § 8, §11 of the New York State Constitution; and

other State law claims codified in the New York State Constitution as well as in the New York

Civil Practice Law and Rules ("CPLR") as they relate to:  prohibition of obstruction of justice,

tampering with witnesses and contracts, conversion of property and fraud; support for freedom of

speech and assembly; freedom from malice in law, from abuse of process and malicious

prosecution, stigma plus character defamation;  and from the intentional infliction of emotional

harm.

Plaintiff alleges that Defendants, with flagrant disregard for Plaintiff's Constitutionally protected

rights, wantonly, recklessly, maliciously, knowingly and purposefully, acting *ultra vires*

individually under a ministerial cloak and in conspiracy with each other under color of state law,

have deprived Plaintiff of his protected rights of freedom of speech, assembly, and enjoyment of

liberty and property in order to harass, intimidate, defame, and deprive him of his lawful rights.

He was forced to resign a position within the Department of Education which he loved and was

constantly given accolades for, because he wanted to hold a CEC member accountable for trying

to sell her books while on the job. This is a case of constructive discharge and retaliation.

However, the DOE prevented his defense of whistleblower status by denying him access to

emails in the DOE system until late April, 2013 (see attached Exhibit 1, return of access to

emails). As far as timeliness is concerned, the Plaintiff against argues that he was cut off from

his emails in the "Outlook" email system inside the Department ("DOE") on July 1, 2010.  It was

3

not until late April, 2013, when he was finally given access to the evidence upon which his claim rests.

The new information should be grounds for starting the clock on the statute of limitations over, and denying the Motion To Dismiss submitted by Defendants, as further argues below. None of Plaintiff's causes of action are frivolous, and all are brought to this for the violation of numerous Constitutional rights by Defendants, many of whom are under oath to the State of New York to be impartial and honor the rules, and Statutes of the State of New York, yet deliberately chose not to.

Plaintiff's invocation of the equitable powers of this Court is just and proper based upon a pattern, practice, custom and policy of bad faith, harassment, defamation and intentional infliction of emotion distress to further a corrupt scheme against Plaintiff's person and property by defaming his good name in such a manner as to cause him harm for no valid reason other than retaliation, and bad faith. Plaintiff seeks economic and compensatory damages and punitive damages to the extent allowable by law, and other appropriate legal and equitable relief pursuant to federal, state and city law.

Plaintiff has met his burden in bringing this claim. He clearly suffered an adverse personnel action, as he faced an increasingly hostile work environment. Defendants' argument that Dennis Walcott, the Chancellor, had no part of the harassment and constructive discharge is without merit. If this were so, then the New York City public school system is without a chief, a rudder for the $22 billion ship. The Defendants would like to have this Court believe that employees are being harassed out of their positions without the individual knowledge and consent of Dennis Walcott, Chancellor. This makes no sense. The presence of malice and the intention to deprive a

person of his/her civil rights is wholly incompatible with the Defendants' policy, use and premise of public service. Additionally, Plaintiff asks that this Court take Judicial Notice that he was subjected to retaliation for speaking out as a citizen, and not as an employee. His job responsibilities did not include exposing an employee's conflict of interest and private benefits to working on a separate business during school time. Therefore his speech was protected.

In the Defendants' Motion there are, it should also be noted, several factual errors: Page 4: "The April 21, 2007 complaint named the City..." (Plaintiff first filed an action against the City in November of 2010); and Page 5: "...Plaintiff alleges that in or about October 2009, he was coerced into signing a letter of resignation irrevocably resigning his position as Superintendent..." (Plaintiff never signed any letter of any nature during said month).  Plaintiff signed a letter in January of 2010 however, that he would step down as Superintendent effective July 1, 2010. During the signing of said letter, he was encouraged to pursue management level positions within the DOE, and this letter was also not of an irrevocable nature. On June 25, 2010, Plaintiff was forced to sign his first and only irrevocable letter of resignation, and this is a case of constructive discharge.

 Constructive dismissal, also called constructive discharge, occurs when employees resign because their employer's behaviour has become so intolerable or heinous or made life so difficult that the employee has no choice but to resign. Since the resignation was not truly voluntary, it is in effect a termination. For example, when an employer makes life extremely difficult for an employee, to attempt to have the employee resign, rather than outright firing the employee, the employer is trying to effect a constructive discharge.

In order to establish a constructive discharge, an employee must plead and prove, by the usual preponderance of the evidence standard, that the employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign."[1]

Plaintiff alleges that he has a prima facie case under 42 U.S.C. §1983 as the actions cited herein [a] occurred "under color of law" and [b] are derivations of Constitutional rights as well as federal and state statutory rights. Defendants deliberately, maliciously, and in bad faith denied him access to relevant and material emails until April 2013, and these would have led to his re-instatement as Superintendent of District 19 and allowed him to clear his name. Plaintiff further alleges that the Defendants intentionally made misrepresentations that led Plaintiff to believe that the Defendants would not impede him from future job opportunities, which induced him to sign a resignation letter after the Department decided to cover-up the selling of books by a public employee, when in fact they did impede him from employment and in so doing, harmed him pecuniarily. Plaintiff was prevented from obtaining access to the proof of his claims, the emails on his Department account, and this was, he argues, an obstruction of justice upon which this matter rests. Before receiving these emails he did not have the relevant evidence to file suit to pursue his rights to due process and make him whole.

Generally: The time requirements in lawsuits between private litigants are customarily subject to equitable tolling if such tolling is necessary to prevent unfairness to a diligent plaintiff. However, equitable tolling, which allows a plaintiff to initiate an action beyond the statute of

limitations deadline is typically available only if the claimant was prevented in some extraordinary way from exercising his or her rights; or, in other words, if the relevant facts present sufficiently rare and exceptional circumstances that would warrant application of the doctrine, as in the case at bar. Equitable tolling has been deemed available where: Extraordinary circumstances prevented the plaintiff from filing despite his or her diligence; the plaintiff actively pursued his or her judicial remedies by filing a defective pleading during the statutory period; the claimant has been induced or tricked by the Defendant's misconduct into allowing the filing deadline to pass; or, the plaintiff despite all due diligence, is unable to obtain vital information bearing on the existence of his or her claim. Haekal v. Refco, Inc. 198 F. 3d 37 (2d Cir. 1999). Here, Plaintiff actively pursued his judicial remedies in the state court without these emails, and he was unable to obtain this vital information by Defendants. Ott v. Johnson, 192 F. 3d 510 (5th Cir. 1999), reh'g denied, (Dec. 3, 1999) and cert. denied, 120 S.Ct. 1834 (U.S. 2000); Coleman v Johnson, 184 F. 3d 398 (5th Cir. 1999) reh'g and reh'g en banc denied, 196 F 3d 1259 (5th Cir. 1999) and cert. denied, 120 S. Ct. 1564, 146 L. Ed 2d 467 (U.S. 2000); Plowden v Romaine, 78 F. Supp. 2d 115 (E.D.N.Y. 1999); Chapple v. National Starch and Chemical Co. and Oil, 178 F. 3d 501, 161 L.R.R.M. (BNA) 2321 (7th Cir. 1999); Narin v. Lower Merion School District, 24 F. Supp. 2d 465, 130 Ed. Law Rep. 1213 (E.D. Pa. 1998), aff'd 206 F. 3d 323, 142 Ed. Law Rep 709, 82 Fair Empl. Prac. Cas. (BNA) 504 (3d Cir. 2000); Abbott v. State, 979 P. 2d 994, 1999 A. M. C. 2212 (Alaska 1999); Bernier v Upjohn Co., 144 F.3d 178, Prod. Liab. Rep. (CCH) ¶15249 (1st Cir. 1998), reh'g and suggestion for reh'g en banc denied, (July 14, 1998); Taliani v. Chrans 189 F. 3d 597 (7th Cir. 1999); U.S. v Griffin, 58 F. Supp. 2d 870 (N.D. Ill 1999), motion to certify appeal denied, 88 F Supp. 2d 891 (N.D. Ill.

2000); Hummel v. Postmaster General of U.S. , 21 F. Supp. 2d 758 (W.D. Mich. 1998); Abbott

v State 979 P2d 994, 1999 A.M.C. 2212 (Alaska 1999).

He should be given the right to pursue his claims in this Court to prevent unfairness in this

matter. Fradella v. Petricca, 183 F.3d 17 (1st Cir. 1999); Polanco v. U.S. Drug Enforcement

Admin., 158 F.3d 647 (2d Cir. 1998); Shisler v. U.S., 199 F. 3d 848, 84 A.F.T. R.2d 99-7532,

1999 FED App. 430P (6th Cir. 1999); Turner v. Smith, 70 F. Supp. 2d 785 (E.D. Mich. 1999);

Narin v Lower Merion School Dist. 24 F. Supp. 2d 465, 130 Ed. Law Rep. 1213 (E.D. Pa. 1998),

aff'd 206 F 3d 323, 142 Ed. Law Rep 709, 82 Fair Empl. Prac. Cas. (BNA) 504 (3d Cir 2000);

Beale v. Burlington Coat Factory, 36 F. Supp. 2d 702 (E.D. Va. 1999); Abbott v State, 979 P.2d

994, 1999 A.M.C. 2212 (Alaska, 1999).

Plaintiff argues that the Defendants could have given him access in 2010 to the emails which he

received in late April 2013, but they did not, and he had no recourse but to file a state claim

without these emails. He further argues that he should be allowed to receive a remedy for the

damages cited in his Complaint now that he has received the information proving his claim.

Bearing a close parallel nature, courts have found "special circumstances" in civil cases

justifying remand when new evidence arises that was unavailable before suit, but have refused to

remand when the evidence arises that was unavailable before suit, but have refused to remand

when evidence existed before suit.  See Hamburg v. Life Ins. Co. of N. Am, 470F App'x 382,

385-86 (5th Cir. 2012) (per curiam). The legal standard for the aforementioned states that a

plaintiff's motion for reconsideration will be decided under Rule 59(e) of Federal Rules of Civil

Procedure.  Ludwig v. Liberty Mutual Fire Insurance Company, No. 8:03-cv-2378-T-17-MAP,

2005 U.S. Dist. LEXIS 37718, at *6 (M.D. Fla Mar. 30, 2005). As stated in Florida College of

Osteopathic Medicine, Inc. v. Dean Witter Reynolds, Inc, 12 F. Supp 2d 1306, 1308 (M.D. Fla. 1998), Page 3

"A motion for reconsideration must demonstrate why the court should reconsider its past decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." Further, "in the interests of finality and conservation of scarce judicial resources, reconsideration is an extraordinary remedy to be employed sparingly." Lamar Adver. of Mobile, Inc. v. City of Lakeland, 189 F.R.D. 480, 489 (M.D. Fla. 1999).This Court recognizes three grounds to justify reconsideration of a prior order under Federal Rule of Civil Procedure 59(e): "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice." Fla. College of Osteopathic Med., Inc., 12 F.Supp.2d at 1308."

Plaintiff was also harassed into resigning his position leaving him permanently scarred and his name defamed. Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to influence, delay, or prevent the testimony of any person in an official proceeding, or cause or induce any person to withhold testimony, or withhold a record, document, or other object, from an official proceeding, as Defendants have attempted to do by threatening, is acting unlawfully and is tampering with an informant. This Court has jurisdiction over 18 U.S.C. §1512.

When the municipal department and/or State is one of the perpetrators and violators as in the instant case, there can be no expectation of just, if any, relief from it. Neither can cause a federal violation, and then try to prohibit litigants from seeking redress in the federal courts for those same violations.

There is no court other than this one that can hear the claims asserted by Plaintiff in the instant complaint. No other action has been filed in this matter.

## POINT I: RELEVANT BACKGROUND FACTS

A product of the N.Y.C. School system, Plaintiff began his career in education as a teacher of Language Arts and Legal Studies at Shell Bank Intermediate School. An actor for the Broadhollow Players of Long Island, Plaintiff brought his love of the theatre to the students of Shell Bank, by directing several successful student productions. His directorial skills were also evident at Baldwin Senior High School where he served as the school's drama coach. As Assistant Principal of P.S. 140 (District 28) Plaintiff was an instrumental member of the team that removed the school from "Corrective Action".

Summer months were an opportunity for Plaintiff to work with students in a recreational environment. As the director of summer camps for underprivileged students, (a program created by the late Chancellor Green) Plaintiff honed his leadership skills.

The summer of 2003 brought him to I.S. 302 (Region 5, District 19) as its' Principal. I.S. 302 was a SURR school in jeopardy of closure. Working collaboratively with Dr. Kathleen Cashin and the Region 5 team, many successful strategies, activities and programs were implemented. As a result, student achievement scores improved dramatically and I.S. 302 was removed from the SURR list. Plaintiff shared this success with the staff of I.S. 302 and stated in a memo that this success "is a testament to your dedication and commitment to our students."

Indeed, Brooklyn Borough President Marty Markowitz honored Principal Weinstein's dedication by a proclamation making January 23, 2006 "Martin Weinstein Day in Brooklyn, USA". On March 11, 2007, he was named Intermediate School Principal of the Year by The Association of

Orthodox Jewish Teachers (AOJT). Realizing that physical activity can be linked to learning, Plaintiff, an accomplished marathon runner, introduced his running passion to I.S. 302. The I.S. 302 Striders is a students' running club that has received media attention. Students and staff coaches such as Plaintiff have committed themselves to a regimen of early morning and afternoon workouts as well as weekend races. Once again, another method to mold and motivate youngsters to always do their best.

Passing along to the next generation of teachers and administrators his strategies and ideas, Plaintiff is an adjunct professor at both Brooklyn and Touro College Graduate Schools of Education, Special Education and Psychology. He attributes his success as a public school principal to his roots as a classroom teacher. "By being sensitive and empathetic to the individual and unique needs of the students in my classes, I was able to gain a better sense of how to provide them with their requisite skills for success. With this said, I believe that my strongest attribute as a principal is to empower those around me to fulfill their potential."

From August 2007 to June 30, 2010 Plaintiff worked as the Superintendent for District 19 of the NYC Department of Education (DOE) in Kings County New York. In late October of 2009, Plaintiff was summoned to the Office of the Chancellor at 52 Chambers Street, New York, N.Y., by Dr. Dorita Gibson, Supervising Senior Superintendent. Plaintiff had exchanged emails with the former Chancellor [Joel Klein], about the Yankees. While the Chancellor had participated in this exchange and even encouraged it, supervisors within DOE frowned on this activity.

In January 2010, Plaintiff was then coerced into signing a letter of resignation ending his position as Superintendent (non irrevocable) and he was told and even encouraged to pursue another similarly paid position within DOE. In short, this was an action which was neither going to harm Plaintiff financially nor his professional standing. Defendants knew at that time that they were

11

deliberately, maliciously, and in bad faith lying to Plaintiff in order to get his resignation after false claims were made against his good character. His resignation is a result of this fraud.

During the second week in January, 2010, Plaintiff applied for a Network Leader's position at the same salary he had been receiving as a Superintendent. Plaintiff immediately received word from Executive Director Anthony Canelli that his phones were "ringing off the hook" from principals excited about the prospect that he would be working with them. At the same time Plaintiff reported the illegal activity of one of the District's CEC members, formerly known as School Board Members, to the Special Commissioner of Investigation. In essence, one of the members was pressuring district employees, as well as Department of Education employees in other districts, to purchase a book she had recently published.

During the course of the investigation, Plaintiff received a death threat on January 8, 2010, which he reported to the Special Commissioner as well as to the 81st Precinct in Brooklyn.

Prior to this investigation, Plaintiff had asked his office staff if anyone had any knowledge that the offender had emailed principals in Plaintiff district regarding the sale of her book. One employee stated she did have such an email. Plaintiff asked her to forward it to him and she replied for him to leave the offender alone and to let sleeping dogs lie.

In late January, Plaintiff learned that the offender confessed to making the threatening call to him and had she also resigned her position as CEC member. In addition-, Plaintiff was informed the offender would probably have to pay a "heavy fine" to the Conflicts of Interest Bureau. After that, the retaliation against Plaintiff commenced.

In late January of 2010, Plaintiff received a call from Anthony Canelli requesting that Plaintiff "pull his application" as Network Leader. Canelli informed Plaintiff that due to the negative feedback he received from Chancellor Klein and Eric Nadelstern there was a problem with the

Plaintiff, and Plaintiff should not be working in a management capacity. Plaintiff emailed Nadelstern and stated that his reputation as a superintendent was exemplary and in addition, principals are coming out in droves to support his new role as Network Leader. His email response was that Plaintiff still had tenure as a principal, should he elect to remain with the New York City DOE. Gibson informed the Plaintiff that he should comply with the request and pull his application accordingly and the overt insinuation was that if he did not do so, he would infuriate senior leadership and preclude himself from getting either a job with the DOE or even outside the DOE in his field.

In the weeks which followed, Plaintiff's office staff began behaving in an uncivil and discourteous manner towards him, as well as towards, David Best, District 19 CEC Member who had acted as a witness against the offender. Additionally, the attendance of one of Plaintiff's employees, the offender's close friend, became problematic. She was absent, late or left work early at least once week and in several instances, she failed to call or email regarding said absences. Although, Plaintiff did not discipline her in writing, he sent her emails where he discussed her failure to report her absences which constituted the abandonment of her position. During this time, Plaintiff applied for several management-level positions within the department. Plaintiff's applications were invariably received with great interest by department heads. In virtually every instance he was informed that due to feedback from "above", or words to that effect, they would not allow him to advance in the process.

In late April of 2010, Plaintiff received an email from Ms. Gina N. Martinez, Equal Opportunity Compliance Officer for the DOE's Office of Equal Opportunity who indicated that one of his employees has made an allegation that he had engaged in sexual harassment and Plaintiff agreed to meet with her on May 11, 2010 in her office. Martinez stated that the offender's friend had

13

accused him of suggesting that she participate in a Ménage a Trois with three parents; this allegation was completely false. The offender's friend had herself engaged in a course of conduct in which she always made incredibly inappropriate lewd comments with sexual connotations. Upon information and belief she either was, or is now, being investigated by OEO for lewd and inappropriate comments.

At the appearance before Martinez, Plaintiff was asked if he had engaged in any non-consensual physical contact with any employees in his office who were all female.  Plaintiff responded he had not and this fact was uncontested. Plaintiff had a witness sitting in the meeting with him who had exonerating evidence and who was a principal in Plaintiff's district and for some inexplicable reason she was not allowed to present her evidence. Plaintiff informed Martinez that the offender's friend's complaint was an act of retaliation for his inquiries relating to her attendance as well as in retribution for the SCI investigation Plaintiff caused to be initiated against her friend. Martinez stated that she would email Plaintiff her decision in a timely manner.

 In early June, several discussions occurred between Dr. Gibson, Dr. Feijoo and Plaintiff regarding his transition to principal although Plaintiff still expressed interest in a management position. However, Gibson and Feijoo, stated that a management position would be out of the question and they expressly told him to drop it and to just leave it alone. Nevertheless, Plaintiff was assured he would receive a principalship commencing July 1, 2010.

On June 16, 2010, Plaintiff received an email from Martinez, that her office had substantiated the allegation made against him, and informing him that Gibson was asked to determine appropriate disciplinary action. The charge which was substantiated against Plaintiff was that he had made the comment to the offender's friend that she should have a ménage a trois with three

parents. This charge was substantiated despite the only information allegedly supporting the allegations being uncorroborated, and was supplied by a person who has subsequently been discredited and who had a reason to seek retribution against Plaintiff for what he caused to happen to her friend. Additionally, the false charge was reported a day after Plaintiff had emailed his accuser regarding her failure to report an absence, something for which she could have been terminated. During the week of June 21, 2010, Plaintiff was notified by Feijoo that a principalship in District 18 was being held for him and that he should make arrangements to visit the school prior to July 1, 2010.

On June 25, 2010, Plaintiff was summoned by Gibson to the Chancellor's Office. During the course of the meeting, Plaintiff was told that the Chancellor reviewed OEO's report. He was told that it was the decision of that office to have him terminated, or in the alternative, he could sign an irrevocable letter of resignation, effective June 30, 2010.   This letter was distinguishable from the prior resignation letter because it precluded Plaintiff from taking any position within DOE. Plaintiff signed the letter despite having committed no wrongful act as he was pressured during the meeting, and he was not given the opportunity to consult with an attorney or given time to reflect before he signed and without being given the opportunity to read and review the EOE report. Plaintiff was made to understand that if he had not signed the letter, as he was being pressured to do, he would have been terminated and he may never have had a chance to work in another school system. He was removed from the DOE email system.

In late August, 2010, Plaintiff received word that Mr. David Best, District 19 CEC Member had stepped forth to corroborate his claims that the allegation made against him was an act of retribution. Despite the fact that the finding against the Plaintiff was based solely on false

information provided by a badly impeached witness, defendants have been disseminating the defamatory finding within Plaintiff's chosen field.

Plaintiff attended a job interview in September of 2010 at which time, he was told by the interviewer, Harvey Newman, that being promulgated by the DOE was that Plaintiff was terminated for sexual harassment.  To date, Plaintiff has not been made whole, and has lost, *inter alia*, personal property and possessions and promotional advancement opportunities, due to this judgment against him which Defendants knew was false and yet have pursued ever since.

Finally, in late April 2013 the Department allowed Plaintiff to access his emails where he saw, read, and downloaded the evidence that his alleged "sexual misconduct" had been made up by Defendants. He did not have this evidence prior to late April 2013, because he no longer had access to his emails inside the DOE.

Defendants' purpose was to crush Plaintiff, defame him, and deny Plaintiff his lawful and protected rights to freedom of speech, and other civil rights and protections pursuant to both State and Federal statutes.

Defendants have shown frivolous conduct and flagrant disregard,  actionable negligence and fraud pursuant . It is true that the state courts are wholly without power in any way to control the operations of the federal courts, but the reverse is not true. . .Furthermore the federal courts possess the right to protect their own jurisdictional rights or the rights of parties to suits before them by restraining orders forbidding proceedings in the state courts. A district court's has discretion to determine if "newly discovered evidence warrants a new trial...determinative factor — whether newly discovered evidence would have influenced the jury — has been informed by the trial over which it presided." United States v. Stewart, 433 F.3d 273 (2006)

ARGUMENT

POINT II: THE CAUSES OF ACTION BROUGHT IN THE COMPLAINT CANNOT BE DISMISSED WITHOUT VIOLATING PLAINTIFF'S RIGHTS TO THE RELIEF HE REQUESTS

Section 1983 of Title 42 of the U.S. Code, enacted by Congress pursuant to §5 of the Fourteenth Amendment, creates an action for damages and injunctive relief against individuals and local governmental bodies who deprive a plaintiff of rights, privileges, or immunities secured by the Constitution and Laws. In order to establish a prima facie §1983 cause of action based on a Constitutional violation the plaintiff must prove that the defendant's conduct was a cause in fact of plaintiff's constitutional deprivation, and such deprivations may include:

(i) violations of Fourteenth Amendment guarantees standing alone, as, for example, procedural due process and equal protection;

(ii) violations of those provisions of the Bill of Rights which are incorporated by the due process clause of the Fourteenth Amendment and made applicable to the states; and,

(iii) violations of constitutional rights, based upon the due process clause, which are not explicitly mentioned in the Constitution, such as rights of privacy and of access to the courts.

In order to establish a prima facie §1983 cause of action in connection with federal statutory rights or "laws" the plaintiff must prove that defendant's conduct was a cause in fact of plaintiff's own statutory deprivation.

For example, in Golden State Transit Corp. v. City of Los Angeles, 493 U.S. 103, 110 S. Ct. 444, 107 L. Ed. 2d 420 (1989), the Supreme Court held that the National Labor Relations Act created §1983-enforceable rights in labor and management against interference by local governments in collective bargaining. Here, Plaintiff has clearly shown statutory deprivation by the defendants named in this matter by the facts that he was lied to and harassed into offering his resignation as

Superintendent, and then  he was deprived of his full salary without due process of law after blowing the whistle on a conflict of interest matter within the CEC in District 19.

In addition, the deprivation was the end result of deliberate, reckless, arbitrary and capricious disregard for the law and facts in this matter by defendants whose sole purpose was to deprive Plaintiff of his Constitutional rights as well as his property and liberty rights, in retaliation for his exposing the corruption within his workplace as a private citizen speaking out on a matter of public concern.

Whether it is a Fourteenth Amendment violation or a federal statutory violation that is alleged, §1983 requires that the challenged conduct be both color of law and state action. This means that color of law is a condition precedent to stating a  §1983 claim. For all practical purposes, according to the Supreme Court, "color of law" and state action are the same where Fourteenth Amendment violations are involved and mean that  §1983 regulates state and local government conduct, as distinct from purely private conduct. Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982), rev'g 639 F. 2d 1058 (4th Cir. 1981).

Here, there is no serious question about the existence of state action, as Plaintiff was acting in compliance with state law and authority at all times. In Monroe v. Pape (365 U.S. 167, 81 S. Ct. 473, 5 L Ed. 2d 492 (1961); Screws v. U.S. 325 U.S. 65 S. Ct. 1031, 89 L. Ed. 1495 (1945), also concerning ultra vires violation of due process rights of a prisoner, held to be action under color of law; Home Tel. & Tel. Co. v. City of Los Angeles, 227 U.S. 278, 33 S. Ct. 312, 57 L. Ed. 510 (1913), dealing with injunctive relief under the Fourteenth Amendment.

"To establish a cause of action for procedural due process violation, a plaintiff must first prove that a person acting under color of state law deprived him of a protected property interest; and

second, he must show that the procedures available to him failed to provide him with due process of law." *Alvin v. Suzuki*, 227F.3d107,116 (3d Cir. 2000)"

Section 1983 provides redress for individuals whose constitutional rights are violated by government actors. "To establish liability under 42 U.S.C. §1983, a plaintiff must show that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained injury." *Elmore v. Cleary*, 399 F.3d279,281 (3d Cir. 2005)."

And Section 1983 Under Color of State Law:

"Generally, to satisfy the under color of state law prong, the defendant must have "exercised power possessed by virtue of state law and made possible only because wrongdoer is clothed with authority of state law." *David v City and County of Denver*, 101F3d1344 (10th Cir. 1996)....."a private party who willfully participates in a joint conspiracy with state officials to deprive a person of a constitutional right acts 'under color of state law' for purposes of §1983." *Abbott v. Latshaw*, 164F.3d141,147-48 (3dCir.1998)(quoting *Dennis v Sparks*, 449 U.S. 24, 27-28 (1980))......

To demonstrate a conspiracy under §1983, a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law'. *Williams v. Fed*or, 69 F. Supp.2d 649,666 (M.D. Pa. 1999) (quoting *Parkway Garage, Inc. v City of Phila.*, 5F3d 685, 700 (3d Cir. 1993))......"

Plaintiff has shown this Court that he was harmed after Defendants concocted a scheme to extort his signature on an agreement which took away his due process rights and led to their enrichment under color of law. He had no access at that time to any emails or documentation of the unlawful

deprivation to which he was subjected. The new information, the emails on the very incident which caused Plaintiff's harassment and resignation under duress, was only recently released by the Department. Plaintiff could not obtain access before April 2013 to these relevant emails. Therefore, Plaintiff requests that this Court deny the Defendants' Motion To Dismiss because of the obstruction of justice actively and purposefully put in place before April 2013, which has led to the harm and damages to the Plaintiff cited herein and in the Complaint.

States and state agencies are entitled to Eleventh Amendment immunity in federal court, but local governments have no immunity from damages flowing from their constitutional violations, and may not assert the good faith of its agents as a defense to liability.  Further, state law sovereign immunity and state law limitations on damages do not protect local governments from liability under section 1983,  and state laws requiring pre-suit notification prior to initiating an action against the state or its subdivisions similarly do not apply.  Therefore, local governments are left in the unique and unhappy situation of being subject to suit without the benefit of any form of immunity.

Plaintiff requests that this Court take Judicial Notice that the Defendants made no claim to immunity in their Motion To Dismiss, therefore this Court may not consider any immunity for the State in this matter. The Complaint must be granted in its entirety.

Title 18, U.S.C., Section 242
Deprivation of Rights Under Color of Law

This statute makes it a crime for any person acting under color of law, statute, ordinance, regulation, or custom to willfully deprive or cause to be deprived from any person those rights, privileges, or immunities secured or protected by the Constitution and laws of the U.S. This law further prohibits a person acting under color of law, statute, ordinance, regulation or custom to willfully subject or cause to be subjected any person to different punishments, pains, or penalties,

20

than those prescribed for punishment of citizens on account of such person being an alien or by reason of his/her color or race.

Acts under "color of any law" include acts not only done by federal, state, or local officials within the bounds or limits of their lawful authority, but also acts done without and beyond the bounds of their lawful authority; provided that, in order for unlawful acts of any official to be done under "color of any law," the unlawful acts must be done while such official is purporting or pretending to act in the performance of his/her official duties.

As far as the statute of limitations argument in the Motion To Dismiss, The Reconstruction Civil Rights Acts did not contain a statute of limitations for section 1983 actions, and it is appropriate to adopt a local time limitation so long as it is not inconsistent with federal law.  The Supreme Court has held that section 1983 is best characterized as a tort action for the recovery of damages, and therefore held that the appropriate statute of limitations to be adopted is the state statute applicable to personal injury actions. In New York State the statute of limitations for personal injury claims is three years, however here Plaintiff argues:

(a) the personal injury Plaintiff has suffered at the hands of the Defendants  is ongoing, and has not been remedied to date;

(b) the emails handed over in April 2013 gave Plaintiff the supporting documentation which he needed to make the Complaint cited herein;

(c) the emails show that Plaintiff blew the whistle on an employee who was setting him up, and this caused the Department to start what can be seen as a constructive discharge, or termination. Yet, Plaintiff is not culpable of any wrong-doing, and he was never allowed to present his side of the story. Constructive dismissal, also called constructive discharge, occurs when employees resign because their employer's behavior has become so intolerable or heinous or made life so

21

difficult that the employee has no choice but to resign. Since the resignation was not truly voluntary, it is in effect a termination. For example, when an employer makes life extremely difficult for an employee, to attempt to have the employee resign, rather than outright firing the employee, the employer is trying to effect a constructive discharge. In order to establish a constructive discharge, an employee must plead and prove, by the usual preponderance of the evidence standard, that the employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign." Here, Plaintiff has clearly shown that there was not a scintilla of factual evidence that he encouraged or in any way made possible a " Ménage -a-trois" and, he was an excellent, dedicated and highly regarded Superintendent until the Defendants decided they would rather protect the family advocate than him or his rights to be heard as a public employee.

(d) In January of 2010, Plaintiff reported the misconduct of a CEC member (formerly known as School Board Member) to his direct supervisor Dr. Dorita Gibson, Senior Supervising Superintendent (now serving as one of the City's Deputy Chancellors). Plaintiff was directed by Dr. Gibson to report the aforementioned individual's misconduct to the Special Commissioner of Investigation a.k.a. SCI. SCI investigated Plaintiff's report and this lead to the resignation of the individual from the CEC, but also the resignation of Plaintiff as Superintendent.

Plaintiff received a death threat from said CEC member and reported the foregoing to SCI and to Dr. Gibson – to no avail. The behavior of employees in his office loyal to the CEC member became intolerable, confirmed by Mr. David Best, former CEC President. One of the employees who had encouraged Plaintiff in January of the same year, told Plaintiff not to pursue any action against the CEC member who resigned. However she began to engage in unprofessional

behavior worthy of dismissal ( not reporting her absence to work). This same employee lodged a fallacious claim against Plaintiff with the Office of Equal Opportunity. Plaintiff was summoned to the Office of Equal Opportunity in May of 2010. And, despite having a witness by his side during a conference with an OEO attorney, said witness was not afforded the opportunity to testify on his behalf. Moreover, the preponderance of his testimony was not noted for the record. Plaintiff received a letter from OEO in June of 2010, which stated that despite the fact there were no witnesses to corroborate the employee's claim, this office nonetheless substantiated the claim against him. In late June of 2010, Plaintiff was forced to resign his position.


POINT III: PLAINTIFF HAS MET HIS BURDEN TO PROVE VIOLATIONS
OF LAW PURSUANT TO §1983 BY CITING FACTS IN A TIMELY FASHION

The "Doctrine of laches" is based upon the maxim that equity aids the vigilant and not those who slumber on their rights. It is defined as neglect to assert a right or claim which, taken together with a lapse of time and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity. Wooded Shores Property Owners Ass'n, Inc. v Matthews, 37 Ill.App.3d 334, 345 N.E.2d 186, 189. Laches also applies here as the neglect for an unreasonable and unexplained length of time under the circumstances permitting diligence, to do what in law should have been done. Lake Development Enterprises, Inc. v Kojetinsky, Mo.App. 410 S.W.2d 361, 367. Laches requires an element of estoppel or neglect which has operated to prejudice a party, and this is the case in this proceeding. Estoppel by laches is a failure to do something which should be done or to claim or enforce a right at a proper time. Hutchinson v Kenney, C.C.A.N.C. 27 F2d 254, 256.

Estoppel in pais (equitable estoppel) rests upon the principle that when a person by his/her acts causes another to change his/her condition to his detriment, the person performing such acts is

23

precluded from asserting his/her right which he otherwise might have had. Peplinski v Campbell, 37 Wash.2d 857, 226 P.2d 211, 213. In the case at bar Defendants failed to address or remedy the unreasonable and unexplained delay in giving Plaintiff his emails, which worked to the disadvantage of Plaintiff and made him sign a revocable resignation under duress, in order to delay the justice he demanded and had a right to.  Kennedy v Denny, 237 Ky. 649, 36 S.W.2d 41, 42.

Defendants mislead Plaintiff to his prejudice. Wisdom's Adm'r v Sims, 284 Ky. 258, 144 S.W.2d 232, 235,  236. To be relieved of default, Defendants are required to show reasonable excuse for delay  and that claim has merit.

Here, Defendants rely on conclusions such that Plaintiff "could not" "should not" and "did not" address the deprivation of his Constitutional rights in a timely fashion, if at all. State v Abernathy, 159 Tenn. 175, 17 S.W.2d 17, 19. Plaintiff requests that this Court discard such diversions from the matter at hand, namely to provide Plaintiff the justice he has waited so long to receive, both in terms of being restored to his original title, as well as relieving him of the emotional distress and physical effects this has caused his mind and body.


POINT IV: DEFENDANTS HAVE CREATED PROCEDURAL ERRORS
THAT ARE FATAL TO A FAIR HEARING FOR PLAINTIFF  AND FURTHER
THE DENIAL OF DUE PROCESS CITED IN HIS COMPLAINT

The Equal Protection Clause of the 14th Amendment of the U.S. Constitution prohibits states from denying any person within its jurisdiction the equal protection of the laws. In other words, the laws of a state must treat an individual in the same manner as others in similar conditions and circumstances. Plaintiff relied on the New York City judicial system and its NYC counterparts to provide him with the same relief for doing his job as his peers. This did not happen, as he was

24

punished and those who corrupted the system were not given the same treatment, after he

decided that the CEC member violating the public trust, should be reprimanded. Plaintiff was

blocked from defending his position, career, and character.

Black's Dictionary describes the obstruction of justice as follows:

"Impeding or obstructing those who seek justice in a court, or those who have duties or powers
of administering justice therein. The act by which one or more persons attempt to prevent, or do
prevent, the execution of lawful process. The term applies also to obstructing the administration
of justice in any way – as by hindering witnesses from appearing, assaulting process server,
influencing jurors, obstructing court orders or criminal investigations. Any act, conduct, or
directing agency pertaining to pending proceedings, intended to play on human frailty and to
deflect and deter court from performance of its duty and drive into compromise with its own
unfettered judgment by placing it, through medium of knowingly false assertion, in wrong
position before public, constitutes an obstruction to the administration of justice."
Toledo Newspaper Co. v U.S., 247 U.S. 402, 38 S.Ct. 560, 564, 62 L.Ed 1186. 18 U.S.D.A.
§1501 et seq.
Black's Law Dictionary, 6th Ed. P.1077

And,

"Whoever, having knowledge of the actual commission of a felony cognizable by the court of the
United States, conceals and does not as soon as possible make known the same to some judge or
other person in civil or military authority under the United States, is guilty of the federal crime of
misprision of felony. 18 U.S.C.A. §4"
Black's p. 1000


Here, the failure to deny Rule controls, and none of the defendants have met their burden for

summary judgment. In Harris v City of New York, 186 F. 3d 243 (2d Cir, 1999) the Court

discussed the high burden of proof necessary on a motion to dismiss under Fed. R. Civ. P.

12(b)(6) and held: Any Rule 12(b)(6) movant for dismissal faces a difficult (though not

insurmountable) hurdle. (citations omitted). On a motion to dismiss under 12(b)(6), the Court

must accept as true the factual allegations in the complaint, and draw all favorable inferences in

favor of the Plaintiff. The district Court should grant such a motion only if, after viewing

plaintiff's allegations in this favorable light, it appears beyond doubt that the plaintiff can prove

no set of facts in support of his claim which would entitle him to relief"

It is well settled that the courts in New York follow the Supreme Court determination in Conley

v Gibson, 335 U.S. 41, 78 S.Ct99, 2 L. Ed 2d 80 (1985): dismissal could only be granted when it

"appears beyond doubt that the plaintiff can prove no set of facts in support of his

claim…Federal Rules reject the approach that pleading is a game of skill in which one misstep

by counsel may be decisive to the outcome and accept the principal that the purpose of pleading

is to facilitate a proper decision on the merits."

Applying the standard, the particularity alleged in plaintiff's complaint demonstrates that the

defendants have been provided with more than fair and ample notice of the plaintiff's claim. The

allegations are based on actual facts (in the Exhibits) and personal knowledge of the Plaintiff.

The allegations are specific, and do not constitute conjecture or surmise and are not conclusory.

See also Chamber v Time Warner, Inc., 282 F. 3d 147 (2d Cir, 2002).

With respect to the claim for the intentional infliction of emotional distress, the tort has four

elements: (a) extreme and outrageous conduct; (b) intent to cause, or disregard of a substantial

probability of causing severe emotional distress; (c)a causal connection between the conduct and

injury; and (d) severe emotional distress. Howell v New York Post, 81 N.Y. 2d 115, 596 N.Y.S.

2d 250 (1993). The courts have found liability where the  conduct has been so "outrageous in

character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

regarded as atrocious, and utterly intolerable in a civilized community." Fisher v Maloney 43

N.Y. 2d 553, 402 N.Y.S. 2d 991 (1978). Any person who  reviews the resignation signed by

Plaintiff under duress can see that this was extortion, and would reasonably cause any person to

have emotional distress.

It is well settled that §1983's color of law was not intended to limit Fourteenth Amendment violations which could be redressed by §1983 actions. In short, " the under color of state law requirement does not add anything not already included within the state action requirement of the Fourteenth Amendment...." Lugar v Edmondson Oil Co, Inc., 457 U.S. at 935 n.18. The Court ruled that in a due process challenge to state attachment procedures, "invoking the aid of state officials to take advantage of state created attachment procedures...is sufficient when the state has created a system whereby state officials will attach property on the ex parte application of one party to a private dispute." 457 U.S. at 942. Because the Plaintiff was challenging the constitutionality of these procedures and not merely alleging their misuse or abuse, plaintiff was deprived of his property through state action and the private defendants therefore acted under color of law.

The Lugar Court's ruling on the state action/color of law relationship means that once a Fourteenth Amendment violation (with its state action requirement) is found, the §1983 plaintiff need not surmount a separate color of law hurdle.

This is comparable to the Court's holding that §1983 has no independent state of mind requirement. However, because §1983 applies to other constitutional and federal statutory provisions ("laws" actions) with no state action requirement, "the statutory concept of action under color of state law would be a distinct element of the case not implicitly satisfied by a finding of a violation of the particular federal right." 457 U.S. at 935 n.18.

Here Plaintiff requests that this Court support his complaint as misconduct by defendants under color of state law and pursuant to the guidelines of §1983.

POINT V
LEAVE TO REPLEAD SHOULD BE FREELY GIVEN.

Plaintiff seeks leave to replead. In this vein, the Court's attention is respectfully referred to

Cortec Industries Inc., v Sum Holding L.P., 949 F. 2d 42 (2d Cir. 1991) where the court held:

"We begin with a statement of the rule. It is the general practice upon granting a motion to

dismiss to allow leave to replead. See, e.g. Ronzani v. Sanofi S.A., 899 F.2d 195, 198 (2d Cir.

1990 and other authority). Although leave to replead is within the discretion of the District

Court, refusal to grant it without any justifying reason is an abuse of discretion (authority)."

Defendants' purpose was to crush Plaintiff, defame him, and deny Plaintiff his lawful and

protected rights to freedom of speech, and other civil rights and protections pursuant to both

State and Federal statutes.

 Defendants have shown frivolous conduct and flagrant disregard, actionable negligence and

fraud pursuant . It is true that the state courts are wholly without power in any way to control the

operations of the federal courts, but the reverse is not true.  Furthermore, the federal courts

possess the right to protect their own jurisdictional rights or the rights of parties to suits before

them by restraining orders forbidding proceedings in the state courts.


 Plaintiff Pro Se requests this Court's notice of the following: that Plaintiff has tried his best to

file a pleading that is in accordance with Rule 8(a)(2), and asks that this court review the

complaint in light of this as a best effort made in good faith; and that any consideration of a Rule

12(b)(6) dismissal for failure to state a claim upon which relief can be granted requires that a

Court accept as true all well-pled factual allegations within and outside the pleadings, since a

motion to dismiss for failure to state a claim tests only the legal sufficiency of a complaint, and a

plaintiff is thus required to allege only enough facts to state a claim to relief that is plausible on

its face. Plaintiff has, he alleges, met this standard to the best of his ability and the instant complaint should not be dismissed.

Defendants have shown a conscious disregard for the rights and reputation of Plaintiff and acted so recklessly as to amount to such disregard. New York State public policy prohibits insurance indemnification for punitive damage awards and prohibits insurance coverage for punitive damages assessed against New York insureds.

As a result of Plaintiff's reporting on fraudulent conduct of Defendants, Plaintiff was and continues to be subjected to the intentional infliction of emotional harm, ethical misconduct, denial of his rights to free speech and assembly, retaliatory harassment and constitutional torts involving rights to liberty, property and freedom of the press from prior restraint.

The conduct and actions of Defendants in retaliating against Plaintiff and subjecting him to assault, ethical misconduct, violations of due process, and equal rights under the U.S. Constitution and the laws of the State and City of New York, were and continue to be unlawful, oppressive and a malicious attempt to retaliate against him..

Defendants' infringement upon and violation of Plaintiff's rights protected under the statutes listed above was and is intended to harm Plaintiff.  Defendants' conduct and actions are intentional, malicious, taken with deliberate indifference and or reckless disregard for the natural and probable consequences. without lawful justification or reason.

As a direct result of Defendants' actions described herein, Plaintiff has suffered and continues to suffer fear, trauma, emotional distress, mental anguish, loss of income, and loss of health. Plaintiff has been subjected to extreme and outrageous conduct by Defendants, whose intent is to cause – or recklessly disregard the substantial probability of causing – severe emotional distress;

29


severe emotional distress to the plaintiff is shown to be proximately caused by the Defendants'
conduct; damages have been severe. These acts created an unreasonable risk of causing the
Plaintiff emotional and physical distress; the Plaintiff's distress was foreseeable; the defendants'
conduct was the cause of the Plaintiff's distress; and facts show there is a breach of direct duty of
care to the Plaintiff.

Plaintiff reported the misconduct he saw, as a concerned citizen. Defendants, acting under color
of law, have engaged in a course of action and behavior rising to the level of a policy and
condoned practice, and this has deprived Plaintiff of his rights secured by the Constitution and
laws in violation of 42 U.S.C. §1983.It can be said that to condone lies, false documentation,
retaliation and other such acts is contrary to Municipal Law and Public Officers Law.

Defendants, and each of them conspired to deprive Plaintiff of his First, Fifth, Seventh and
Fourteenth Amendment rights, and jointly caused such deprivation of rights by acting in concert
to unlawfully and silence Plaintiff as described above.

Such actions by Defendants denied Plaintiff equal protection under the law, and his rights are
guaranteed under U.S.C. §§ 1983, 1985, and the Fourteenth Amendment.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion
to dismiss the complaint, order the case to proceed to discovery on all material factual issues, and
grant such other and further relief as the Court may deem just and proper. In the alternative,
Plaintiff respectfully requests leave to amend the complaint to provide sufficient facts on which
relief can be granted. And, as a third alternative, the Plaintiff respectfully seeks the complaint to
be remanded  to the New York State Court based largely on the Plaintiff's recent acquisition of

Newly Discovered Evidence, which was unavailable prior to, and during New York State Court

proceedings.

Dated: New York, N.Y.
       December 29, 2013

Martin Weinstein



**Microsoft**
**Outlook Web App**

Type here to search | Entire Mailbox ⌄ | 🔍 🕮 | 📧 Options | ❓ | Sign out

| **Mail** |
| 📅 **Calendar** |
| 📇 **Contacts** |

🗑 **Deleted Items** (3)
📝 **Drafts** [5]
📥 **Inbox** (2)
📁 **Junk E-mail** [1]
📤 **Sent Items**

Click to view all folders ⚡

📁 BUP and related matters
📁 Personal

📁 Manage Folders...

---

📨 Reply | 📨 Reply All | 📨 Forward | 📧 ✕ | Close | ◆ ◆ ✕

# Incident # 3717598
## Martinez Raymond

You replied on 4/15/2013 10:11 PM.

**Sent:** Monday, April 15, 2013 1:17 PM
**To:**   Weinstein Martin (84K359)
**Cc:**   Kumar Naresh

Hi my name is Raymond Martinez and I am working on the Restore/Recovery
incident you opened with Help Desk.
At the moment, we are working on the restore/recovery for legal discovery.
This message is to confirm that we are still working on your request and it may
take some more time.
Once the recovery is completed, we will notify you to pick up the CD.

If you have any questions, Please give me a call at 718-935-5499 or you can reply
to this email.

Thanks.

*Raymond Martinez*

Server Operations (E-mail Services)
Division of Instructional and Information Technology
New York City Dept. of Education
2 MetroTech, Suite 3600
Brooklyn, NY 11201
RMartinez28@schools.nyc.gov
718.935.5499

## EXHIBIT 1

Connected to Microsoft Exchange